**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1681

WELLS FARGO BANK, N.A.,

        Creditor – Appellant,

    v.

AMH ROMAN TWO NC, LLC,

        Party-in-Interest – Appellee,

    and

PNC BANK,

        Creditor,

    and

JOHN F. LOGAN,

        Trustee,

    and

CHARLES AZIZ FARAG; SUSAN FARAG,

        Debtors.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:15-cv-00422-BO; 12-02431-8-SWH)

Argued: May 10, 2017                                              Decided: June 12, 2017

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:** John T. Benjamin, Jr., THE LAW OFFICE OF JOHN T. BENJAMIN, JR., P.A., Raleigh, North Carolina, for Appellant. Clinton Shepperd Morse, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellee. **ON BRIEF:** Benjamin W. Smith, THE LAW OFFICE OF JOHN T. BENJAMIN, JR., P.A., Raleigh, North Carolina, for Appellant. Edwin L. West, III, Julia C. Ambrose, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellee.

2

DUNCAN, Circuit Judge:

Two years after the bankruptcy court canceled Wells Fargo Bank, N.A.'s ("Wells Fargo") deed of trust covering a piece of real property, and several months after the property was sold in foreclosure to a bona fide purchaser for value, Wells Fargo moved to set aside the bankruptcy court's order. The bankruptcy court denied Wells Fargo's motion, and the district court affirmed. Wells Fargo appealed. For the reasons that follow, we affirm.

I.

On November 20, 2002, Wells Fargo extended an equity line of credit in the amount of $240,800.00 to Susan Farag and Charles Aziz Farag ("Debtors") secured by a deed of trust on property located at 633 Pendleton Lake Road in Raleigh, North Carolina ("the Property"). On or about December 28, 2004, Debtors refinanced the Property with PNC Bank ("PNC"), taking out a new installment loan and a new line of credit. During this process, Wells Fargo notified PNC that it had frozen the line of credit Wells Fargo had extended to the Debtors, and that the amount due to pay off the obligation was $285,082.11. PNC transmitted the money to Wells Fargo, who receipted it. All of the relevant correspondence and documents referenced the correct loan number. However, Wells Fargo did not close the line of credit, and in fact allowed the Debtors to continue to take advances on it totaling over $300,000.00.

On March 29, 2012, Debtors filed for Chapter 13 bankruptcy, triggering an automatic stay on collection efforts outside the bankruptcy proceeding.

3

*See* 11 U.S.C. § 362(a). At the time of filing, the Debtors owned two properties secured by deeds of trust held by Wells Fargo: the Property and another property located at 8148 Upper Lake Road in Raleigh, North Carolina ("the Other Property"). In the Chapter 13 bankruptcy, PNC filed two proofs of claim secured by the Property in the amounts of $64,970.51 and $475,924.81--the first from the equity line of credit and the second from the promissory note. Wells Fargo also filed a secured proof of claim in the amount of $307,530.84 for the debt arising from its line of credit secured by the Property.

On April 5, 2012, Sean Corcoran, an attorney with the law firm of Brock & Scott, PLLC, filed a notice of appearance in the same Chapter 13 action "as counsel for Wells Fargo Bank, NA, a creditor of the above named Debtor(s)," Charles Aziz Farag and Susan Farag, "pursuant to Bankruptcy Rule 9010(b)." J.A. 183. On October 4, 2012, PNC filed a motion for relief from the automatic stay in the same action under 11 U.S.C. § 362(d), seeking permission to foreclose on its interest in its two deeds of trust on the Property ("Stay Motion"). PNC electronically served the Stay Motion on Corcoran. Wells Fargo did not file a response to the Stay Motion.

On November 7, 2012, the bankruptcy court entered an order (the "Pendleton Property Order" or "Order"), which granted PNC relief from the automatic stay, accorded PNC's deeds of trust priority over Wells Fargo's deed of trust, and canceled Wells Fargo's deed of trust. On January 9, 2013, a certified copy of the Order was recorded in the Office of the Wake County Register of Deeds. Debtors received their final discharge on May 1, 2013, and the bankruptcy court entered a final decree on May 29, 2013.

After the case concluded, PNC foreclosed on the Property. Relying on the Wake County Registry of Deeds, AMH Roman Two NC, LLC ("AMH") purchased the Property on or about June 30, 2014. Corcoran's law firm, Brock & Scott, PLLC, acted as counsel for the foreclosure trustee and prepared the deed that conveyed the Property to AMH. AMH recorded on September 12, 2014.

Claiming it was caught by surprise, Wells Fargo subsequently sought to reopen the bankruptcy proceedings, which the bankruptcy court allowed. On February 11, 2015, over two years after the bankruptcy court issued the Pendleton Property Order, Wells Fargo moved to set aside the Order pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6), which provide for such relief under certain circumstances that are at issue here.[1] After a hearing, the bankruptcy court denied the motion on the grounds that Wells Fargo could not meet certain of Rule 60(b)'s threshold requirements: namely that the motion was untimely and allowing the motion would greatly prejudice AMH, a bona fide purchaser that bought the Property free and clear. Wells Fargo appealed.

The district court affirmed on different grounds. Specifically, the district court concluded that even if Wells Fargo satisfied Rule 60(b)(4)'s threshold requirements, contrary to Wells Fargo's arguments, the bankruptcy court had subject matter jurisdiction and the bankruptcy proceedings did not violate Wells Fargo's due process rights. The district court also concluded that Wells Fargo could not prevail under Rule 60(b)(6) because its motion was untimely, AMH would suffer unfair prejudice, and Wells Fargo

---

[1] Federal Rule of Civil Procedure 60 applies in bankruptcy cases. Fed. R. Bankr. P. 9024.

5

could not establish exceptional circumstances warranting relief. Notably, although Corcoran averred in an affidavit that Wells Fargo employed him to represent Wells Fargo's interest in only the Debtors' Other Property, both the bankruptcy court and the district court found that Corcoran's appearance on behalf of Wells Fargo was general and unrestricted.

Wells Fargo appeals. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

II.

When reviewing a district court sitting as an appellate court in bankruptcy matters, we review factual findings for clear error and legal conclusions de novo. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). We review a district court's denial of a Rule 60(b) motion for abuse of discretion; in so doing we do not review the merits of the underlying order but rather only whether the movant satisfied the requirements for Rule 60(b) relief. *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 277 (4th Cir. 2008).

III.

Rule 60(b) allows a court to "relieve a party . . . from a final judgment, order or proceeding" on a limited number of grounds. Fed. R. Civ. P. 60(b). To prevail, a party must demonstrate (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances. *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). "After a party has crossed this initial threshold, [it] then must satisfy one of the six specific sections of Rule 60(b)." *Id.*

6

One of these specific sections, Rule 60(b)(4), permits a court to relieve a party from a final order if the judgment is "void." Fed. R. Civ. P. 60(b)(4). An order is "void" only if the court lacked personal or subject matter jurisdiction or acted contrary to due process of law. *Wendt v. Leonard*, 431 F.3d 410, 412 (4th Cir. 2005). Rule 60(b) also contains a catchall section, which gives a court authority to relieve a party from a judgment for "any other reason" not articulated in sections (1) through (5), Fed. R. Civ. P. 60(b)(6), but only when the movant demonstrates "extraordinary circumstances." *Dowell*, 993 F.2d at 48.

We first discuss Rule 60(b)'s threshold requirements before turning to the enumerated clauses. Because the requirements are described in the conjunctive, Wells Fargo must meet them all. We focus, however, on the ones most problematic for Wells Fargo's argument, discussing each in turn.

A.

1.

A party must make a Rule 60(b) motion "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and "the movant bears the burden of showing timeliness." *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016). The district court found that Wells Fargo failed to carry its burden. We agree.

The bankruptcy court issued the Order on November 7, 2012, and Wells Fargo waited more than two years to file its Rule 60(b) motion on February 11, 2015. Based on the circumstances in this case, Wells Fargo's delay is not reasonably timely.

At the core of its assertion of timeliness, Wells Fargo contends Corcoran's representation did not extend to the Property. The bankruptcy court found, and the district court agreed, that Corcoran entered an unlimited appearance on behalf of Wells Fargo in the bankruptcy case on April 5, 2012. Notwithstanding Corcoran's affidavit stating that his appearance was only limited to Wells Fargo's interest in the Debtors' Other Property, the record supports the finding that Corcoran filed a general notice of appearance "as counsel for Wells Fargo Bank, NA, a creditor of the above named Debtor(s)," Charles Aziz Farag and Susan Farag, "pursuant to Bankruptcy Rule 9010(b)." J.A. 183. Whatever Corcoran's intention, the finding that Corcoran entered a general and unrestricted notice of appearance was not clearly erroneous. *See In re White*, 487 F.3d at 204.

Wells Fargo concedes that Corcoran received PNC's Stay Motion and the bankruptcy court's Pendleton Property Order and that Corcoran is presumed to have read those documents. At its core, Wells Fargo's timeliness challenge is also intertwined with its argument that the notice to Corcoran was jurisdictionally deficient for reasons we discuss separately. Suffice it to say that for purposes of the discussion of timeliness, the cases on which Wells Fargo relies do not aid its cause.

In *Klapprott v. United States*, 335 U.S. 601 (1949), the Supreme Court found a four-year gap timely where the party faced significant obstacles to the protection of his interests: he was in prison, ill, and without funds to obtain counsel. *Id.* at 607–14. The First Circuit in *Bouret-Echevarria v. Caribbean Aviation Maintenance Corp.*, 784 F.3d 37 (1st Cir. 2015), found that a three-and-a-half-month delay following notice

8

was reasonable given the appellants' "diligent efforts to strengthen the basis for their motion" during that time. *Id.* at 44. Here, by contrast, Wells Fargo had no such hurdles to surmount.

At every critical juncture, Wells Fargo slept on its rights. Wells Fargo did not respond to PNC's Stay Motion when PNC challenged Wells Fargo's interest in the Property. It did not appeal the Order before the bankruptcy proceeding concluded. *See Dowell*, 993 F.2d at 48 ("It is a well settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal."). It also did not seek to enjoin PNC's foreclosure of the Property. Instead, Wells Fargo waited more than two years from the entry of the Order, and several months after AMH purchased the Property in good faith, before seeking relief from the Order. That is not reasonable under the circumstances. *See Bouret-Echevarria*, 784 F.3d at 44 (noting that "[a] reasonableness inquiry evaluates whether a movant acted promptly when put on notice of a potential claim").

2.

A second consideration under Rule 60(b)'s threshold requirements counting against Wells Fargo is that granting the relief Wells Fargo seeks would also create significant unfair prejudice to AMH, an innocent bona fide purchaser who gave fair value for clear title. North Carolina has a race-recording statute under which the first titleholder to record holds an interest superior to anyone who later records. *See* N.C. Gen. Stat. §§ 47-18, 47-20. The very purpose of the race recording statute is "to enable purchasers to rely with safety upon the examination of the records."

9

*Grimes v. Guion*, 18 S.E.2d 170, 172 (N.C. 1942) (quoting *Wood v. Tinsley*, 51 S.E. 59, 59 (N.C. 1905)). Accordingly, a bona fide purchaser of real property for value takes the property free of voidable defects if such purchaser has no actual knowledge of the defects, is not on reasonable notice from the recorded instruments, and would not have become aware of them when attending the sale and exercising reasonable care. *Swindell v. Overton*, 314 S.E.2d 512, 517 (N.C. 1984). The Pendleton Property Order unambiguously canceled Wells Fargo's deed of trust, and a certified copy of the Order was recorded in the register of deeds. AMH purchased the Property in foreclosure in reliance on that Order. Under these circumstances, resuscitating Wells Fargo's deed of trust would unfairly prejudice AMH.

B.

Even if Wells Fargo did satisfy Rule 60(b)'s threshold requirements, it still does not meet the requirements of that Rule's enumerated sections for relief. Wells Fargo contends it is entitled to relief under Rules 60(b)(4) and 60(b)(6). We disagree.

1.

Wells Fargo advances two main arguments under Rule 60(b)(4). First, it argues that, because PNC failed to bring its action in an adversary proceeding complete with an adversary complaint and summons, the bankruptcy court lacked jurisdiction to cancel Wells Fargo's lien, and therefore the court's Order was "void." Second, Wells Fargo contends that the judgement is void because it was entered in violation of Wells Fargo's due process rights. We discuss each argument in turn.

Although Congress has granted the bankruptcy courts broad authority to determine "the validity, extent, or priority of liens," 28 U.S.C. § 157(b)(2)(K), Wells Fargo points out that Bankruptcy Rule 7001 requires an adversary proceeding to do so. *See* Fed. R. Bankr. P. 7001(2) (defining "adversary proceeding" to include "a proceeding to determine the validity, priority, or extent of a lien or other interest in property"). Wells Fargo insists that because PNC obtained the Order in response to a motion for relief from the automatic stay rather than in the course of an adversary proceeding, the bankruptcy court exceeded its jurisdiction. We disagree.

The Supreme Court has "cautioned, in recent decisions, against profligate use of the term" jurisdictional, *Union Pac. R.R. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 81 (2009), and has expressed increasing reluctance to characterize procedural rules as jurisdictional bars, *see, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271–72 (2010). The Court's decision in *Espinosa* is very much on point. There, the debtor proposed to discharge a portion of his student loan debt attributable to accrued interest. By statute, a debtor may discharge such obligations only if they would impose an "undue hardship," *id.* at 263 (quoting 11 U.S.C. §§ 523(a)(8), 1328), and the Bankruptcy Rules required an adversary proceeding to resolve that issue, *see id.* at 264 (citing Rules 7001(6), 7003, 7004, and 7008). Although the debtor failed to initiate such an adversary proceeding, the bankruptcy court nevertheless confirmed the plan, without an adversary proceeding or the undue hardship determination. The creditor received notice of the plan but did not object to either defect and failed to appeal. *Id.* at 264–65. Years later, when efforts to collect the unpaid interest on the debtor's student loan debts

11

prompted the debtor to seek an order enforcing the bankruptcy court's discharge, the creditor responded by filing a Rule 60(b)(4) motion seeking to set aside the bankruptcy court's order confirming the plan. *Id.* at 266. The Supreme Court rejected the creditor's argument that the bankruptcy court's order was void under Rule 60(b)(4) because the bankruptcy court confirmed the plan without making an undue hardship determination or holding an adversary proceeding. As relevant here, the Supreme Court concluded that "the requirement that a bankruptcy court make [the undue hardship] finding in an adversary proceeding derives from the Bankruptcy Rules . . . , which are 'procedural rules adopted by the Court for the orderly transaction of its business' that are 'not jurisdictional.'" *Id.* at 272 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)).

Similarly here, PNC's decision to seek relief through a motion rather than through a separate adversary proceeding did not divest the bankruptcy court of subject matter jurisdiction to grant the requested relief.[2] Congress vested the bankruptcy courts with

---

[2] To the extent Wells Fargo argues that the bankruptcy court exceeded its jurisdiction by applying state laws in violation of *Stern v. Marshall*, 564 U.S. 462 (2011), we disagree. In *Stern*, the Supreme Court concluded that a bankruptcy court lacked subject matter jurisdiction under Article III to enter final judgment on a debtor's tortious interference counterclaim because it did not fall within an exception to the requirement that only Article III judges exercise the judicial power. *Id.* at 493–95. In *Stern* and related cases, the Supreme Court has repeatedly distinguished between state common law claims that do not flow from a federal statutory scheme and the core of the federal bankruptcy power--restructuring debtor-creditor relations by assessing "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Stern*, 564 U.S. at 492 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989)); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1951 (2015) (noting that historical practice and Congress's constitutional authority to enact bankruptcy laws confirm that Congress may assign the restructuring of creditor-debtor relations to non-Article III (Continued)

broad jurisdiction to determine "the validity, extent, or priority" of Wells Fargo's lien, 28 U.S.C. § 157(b)(2)(K), and any failure to follow the procedural rule here does not rise to the level of a jurisdictional flaw.[3]

2.

Second, Wells Fargo argues that the Pendleton Property Order is void under Rule 60(b)(4) because the bankruptcy court entered it in violation of Wells Fargo's due process rights. Specifically, Wells Fargo contends that it did not receive adequate notice of PNC's Stay Motion and repurposes its argument that PNC should have challenged the lien via an adversary proceeding, not a motion. This argument mirrors the one in which Wells Fargo contended that its action was timely, and we similarly reject the argument as without merit here.

Due process "does not require actual notice." *Jones v. Flowers*, 547 U.S. 220, 225 (2006). Instead, it requires notice "reasonably calculated, under all the circumstances, to

---

courts). Here, the bankruptcy court acted well within its jurisdiction when it determined the validity, extent, and priority of Wells Fargo's lien.

[3] Wells Fargo argues that this court's decision in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir. 1995), controls. However, that case addressed the rules-based procedures normally required to invalidate a lien; it said nothing about the subject matter jurisdiction of bankruptcy courts to enter orders affecting title to real property outside the context of an adversary proceeding. *See id.* at 92–94 (holding that creditor's liens survived confirmation of a Chapter 13 wage earner plan because the debtors failed to initiate an adversary proceeding as required under Bankruptcy Rule 7001(2) but remaining silent about jurisdiction). Moreover, even if there were a jurisdictional flaw, this court treats a judgment as void under Rule 60(b)(4) only when the jurisdictional error is "egregious." *Wendt*, 431 F.3d at 413 (citation omitted); *accord Espinosa*, 559 U.S. at 271.

13

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Although we conclude that Wells Fargo received actual notice, even if it did not, the notice it received was constitutionally sufficient. As explained above, the finding that Corcoran entered an unlimited appearance on behalf of Wells Fargo's interests in the Debtors' case was not clearly erroneous. And, as Wells Fargo acknowledges, under longstanding precedent once an attorney files an appearance on behalf of a client, notice to the attorney is notice to the client. *See, e.g.*, *Rogers v. Palmer*, 102 U.S. (12 Otto) 263, 267–68 (1880) (explaining that the law presumes that an attorney communicates notice of any matter within the scope of representation to the client). That is what happened here.[4]

3.

Finally, to the extent Wells Fargo suggests the district court should have exercised its discretion under Rule 60(b)(6) to set aside the Order, the facts are far from the

---

[4] Although failure to issue the Order through an adversary proceeding may have "deprived [Wells Fargo] of a right granted by a procedural rule . . . this deprivation did not amount to a violation of [Wells Fargo's] constitutional right to due process" because Corcoran received actual notice. *Espinosa*, 559 U.S. at 272. Similarly, Wells Fargo's technical objection that the service of the Stay Motion should have come by first class mail instead of electronically does not rise to a constitutional violation. *Cf. Jones*, 547 U.S. at 225. In any event, we note that both the bankruptcy court and the district court recognized that, under the local bankruptcy rules, Corcoran waived service by mail and consented to electronic service when he registered as a filing user. We see no abuse of discretion in the district court's decision to affirm the bankruptcy court's interpretation of its local rules on this issue. *Cf. U.S. Fid. & Guar. Co. v. Lawrenson*, 334 F.2d 464, 467 (4th Cir. 1964) ("A court is, of course, the best judge of its own rules."); *Henderson v. United States*, 476 U.S. 321, 328 n.9 (1986) (deferring to Ninth Circuit's interpretation of local rules).

14

"extraordinary circumstances" that justify such unusual powers. Wells Fargo is a sophisticated party familiar with bankruptcy proceedings. Wells Fargo alone is responsible for the cancellation of its deed of trust through its own mistake or neglect. Vacating the judgment would not "accomplish justice," *Klapprott*, 335 U.S. at 615, but would undermine it.

## IV.

At every stage of this litigation, Wells Fargo was in the best position to protect its interests, and failed to do so. Juxtaposed against a bona fide purchaser for value who is entitled to rely on the registry of deeds, Wells Fargo has nothing to commend it. Accordingly, the judgment of the district court is

*AFFIRMED*.